UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In re:                                              )
Johnny Darrell Lorick,                              )        CASE #: 19-00252-JJG-13
        Debtor.                                     )

## MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS
## (PRIVATE SALE WITH SPECIFIC BUYER IDENTIFIED)
## UNDER 11 U.S.C. §363(f)

**COMES NOW** the Debtor, Johnny Darrell Lorick, by counsel, and hereby moves the Court, pursuant to 11 U.S.C. §363(b), 11 U.S.C. §363(f), and S.D. Ind. L.B.R. B-6004-2, to approve the sale of property as described below.  Debtor states as follows:

1. The property to be sold is: Real estate commonly referred to as 6445 Harrison Ridge Boulevard, Indianapolis, IN 46236;

2. The prospective purchaser is: Juliet Jackson, who is not related to the Debtor;

3. The sales price and an estimate of the net proceeds to be received by the estate are as follows (See preliminary ALTA, attached hereto as Exhibit "A"):

   a. The proposed sale price is **$445,000.00**;

   b. Prorated County Taxes are estimated to total **$3,630.19**;

   c. Colonial Savings, F.A. holds a first mortgage lien in the amount of **$262,792.43** to be paid in full at the time of closing;

   d. Judgment liens to be paid at closing are held by:

      i. **N/A**;

   e. Statutory liens to be paid at closing are held by:

      i. Harrison Ridge Neighborhood Assoc., Inc. - **$1,791.98**.

   f. The proposed real estate commission is 7.0% of the gross sales price, or **$33,375.00**;

   g. The anticipated Title Charges total **$1,720.00**;

   h. Other typical closing costs such as Sewer Assessments and Home Warranties are anticipated to total **$870.14**;

    i.   After payment of the items contemplated above in paragraphs 3(b) through 3(h), it is anticipated that there will be net sales proceeds of approximately **$140,820.26**;

    j.   Debtor agrees to turn over all net proceeds exceeding the allowable exemption of $19,300.00 to the Chapter 13 Trustee so that the Chapter 13 Trustee can distribute said net proceeds to remaining creditors in accordance with the United States Bankruptcy Code.

4. A copy of the Purchase Agreement (Improved Property), including any amendments or counteroffers is attached hereto as Exhibit "B."

5. The property was marketed as follows:

    a.  Debtor previously executed a Listing Contract (Exclusive Right to Sell) with James Gilday – Keller Williams – Indianapolis/Carmel on or about October 29, 2020; and

    b.  No other offers to purchase have yet been received.

6. The known relationships among the prospective purchaser and its insiders and the Debtors and their insiders and the Trustee are as follows:

    a.  No known relationships exist.

7. [If the property includes personally identifiable information as defined in 11 U.S.C. § 101(41A)] The measures that will be taken to comply with 11 U.S.C. § 363(b)(1) are as follows: **N/A**;

8. If the case is under Chapter 11 and if schedules have not been filed, a summary of the Debtors' debt structure, including the amount of the Debtors' secured debt, priority claims, and unsecured debt, is as follows: **N/A**;

9. If the case is under Chapter 11 and a creditors' committee or its equivalent existed pre-petition, the members of the pre-petition committee and the companies with which they are affiliated, and the identity of counsel to that pre-petition committee, are as follows: **N/A**;

10. The current monthly mortgage payment to Colonial Savings, F.A. is being paid through the Chapter 13 Trustee conduit. If the proposed sale of real estate is approved and closed, Debtor shall file an amended chapter 13 plan/motion to modify so that creditor treatment can be clarified and the monthly payment to the Chapter 13 Trustee can be adjusted, if necessary.

Agreed to and Approved:

_Johnny Darrell Lorick - Debtor_

Date: 12/15/2020

     **WHEREFORE**, the Debtor, Johnny Darrell Lorick, by counsel, moves the Court to approve the motion to sell as proposed herein.

Dated: 12/15/2020

Respectfully Submitted,

Michael J. Norris (# 15341-49)
Mike Norris & Associates, P.C.
Attorney for the Debtor
3802 W. 96th Street, #110
Indianapolis, IN 46268
Phone: (317) 266-8888
Fax: (317) 266-3401
E-mail: mike@mikenorrislaw.com

*Exhibit "A"*

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

| | | |
|---|---|---|
| File No./Escrow No.: | 20-11408 | **Indianapolis, IN** |
| Print Date & Time: | 12/14/2020 11:57:35 AM | **3850 Priority Way South Dr.** |
| Officer/Escrow Officer: | | **Ste. 120** |
| | | **Indianapolis, IN 46240** |
| | | **(317)566-9520** |

| | |
|---|---|
| Property Address: | 6445 HARRISON RIDGE BOULEVARD<br>INDIANAPOLIS, IN 46236 (MARION)<br>(49-01-31-103-015.000-407) |
| Legal Desc: | Lot Numbered 19 in Harrison Ridge, Section One, recorded May 19, 1998 as Instrument No. 98-82852, Survey's Correction recorded June 30, 1998 as Instrument No. 98-93138 in the Office of the Recorder of Marion County, Indiana. |
| Borrower: | JULIET JACKSON<br>8550 La Corrida Ct<br>Indianapolis, IN 46227 |
| Seller: | JOHNNY LORICK |
| Settlement Date: | 12/15/2020 |
| Disbursement Date: | |

| Description | Seller | | |
|---|---|---|---|
| | P.O.C. | Debit | Credit |
| **Deposits, Credits, Debits** | | | |
| Sale Price of Property | | | $445,000.00 |
| **Prorations** | | | |
| County Taxes 1/1/2020 to 12/15/2020 @ $3,807.02/Year | | $3,630.19 | |
| **Payoffs** | | | |
| Payoff of First Mortgage Loan to Colonial Savings, F.A. | | $262,792.43 | |
| Principal: $262,792.43 | | | |
| **Commissions** | | | |
| Real Estate Commission to Keller Williams Indy Metro North | | $22,250.00 | |
| Real Estate Commission to Bruce Richardson Realty, LLC | | $11,125.00 | |
| **Title Charges** | | | |
| Title - Lender's Title Insurance to Meridian Title Corporation | | | |
| Title - Owner's Title Insurance to Meridian Title Corporation | | $1,015.00 | |
| Title - Closing Fee to Meridian Title Corporation | | $175.00 | |
| Title - Settlement Services Fee to Meridian Title Corporation | | $75.00 | |
| Title - Title Production - Owners to Meridian Title Corporation | | $300.00 | |
| Title - TIEFF to American Digital Title Insurance Company f/k/a Arsenal Insurance Corporation | | $5.00 | |
| Title - CPL - Seller to American Digital Title Insurance Company f/k/a Arsenal Insurance Corporation | | $25.00 | |
| Title - Deed Preparation - Andrew R. Drake to Meridian Title Corporation | | $75.00 | |
| Title - Delivery/Handling Fee - Mortgage Payoff to Meridian Title Corporation | | $50.00 | |
| **Additional Settlement Charges** | | | |
| to Thrasher Buschmann & Voelkel, P.C | | $1,791.98 | |
| Home Warranty to Residential Warranty Services | | $800.00 | |
| Sewer Assessment to Lawrence Sewer | | $70.14 | |

File # 20-11408

Printed on 12/14/2020 at 11:57 AM

| | P.O.C. | Debit | Credit |
|---|---|---|---|
| Subtotals | $0.00 | $304,179.74 | $445,000.00 |
| Due To Seller | | $140,820.26 | |
| Totals | $0.00 | $445,000.00 | $445,000.00 |



## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Indianapolis, IN to cause the funds to be disbursed in accordance with this statement.

SELLER(S)

_____
JOHNNY LORICK

File # 20-11408
Printed on 12/14/2020 at 11:57 AM

dotloop signature verification: dtlp.us/YoFk-KkW-LY28JO

Exhibit "B"

| Listing Broker (Co.) Keller Williams Indianapolis | (KWIN01  ) By James Gilday Jr. | (6786  ) |
| | Office code | individual code |
| Selling Broker (Co.) Bruce Richardson Realty, LLC | (BRCH01  ) By Bruce Richardson | (33275  ) |
| | Office code | individual code |



INDIANA
ASSOCIATION OF
REALTORS®, INC.

# PURCHASE AGREEMENT
## (IMPROVED PROPERTY)
### For use only by members of the Indiana Association of REALTORS®

1  Date: 11/21/2020

2

3  A.  **BUYER:** Jack Jackson and Juliet Jackson _____ ("Buyer")
4  agrees to buy the following property from the owner ("Seller") for the consideration and subject to the following terms,
5  provisions, and conditions:

6

7  B.  **PROPERTY:** The property ("Property") is known as 6445 Harrison Ridge Blvd
8  in Lawrence _____ Township, Marion _____ County, Indianapolis
9  Indiana, 46236 ____ (zip code) legally described as: _____

10

11  together with any existing permanent improvements and fixtures attached **(unless leased or excluded)**, including, but
12  not limited to, electrical and/or gas fixtures, heating and central air-conditioning equipment and all attachments thereto,
13  built-in kitchen equipment, sump pumps, water softener, water purifier, fireplace inserts, gas logs and grates, central
14  vacuum equipment, window shades/blinds, curtain rods, drapery poles and fixtures, ceiling fans and light fixtures, towel
15  racks and bars, storm doors, windows, awnings, TV antennas, wall mounts, satellite dishes, storage barns, all
16  landscaping, mailbox, garage door opener(s) with control(s) AND THE FOLLOWING: **(If applicable, any smart home**
17  **devices should be addressed in this paragraph.)** Cook Top Gas, Dishwasher, Dryer, Microwave, Oven Built in, Refrigerator,
18  Washer
19  EXCLUDES THE FOLLOWING: _____

20

21  HOME HEATING FUEL: Any remaining fuel stored in tank(s) ☐ to be included in the sale ☐ will be purchased by
22  Buyer at current market price measured within five (5) days prior to closing ☑ not applicable.
23  The terms of this Agreement will determine what items are included/excluded, not the Seller's Disclosure Form,
24  multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller at time of
25  closing the transaction. Buyer should verify total square footage, land, room dimensions or community amenities
26  if material.

27

28  C.  **PRICE:** Buyer will pay the total purchase price of (\$ 437,000 _____ ) four hundred thirty-seven thousand
29  _____ U.S. Dollars for the Property. If Buyer obtains an appraisal of the Property, this
30  Agreement is contingent upon the Property appraising at no less than the agreed upon purchase price. If appraised
31  value is less than the agreed upon purchase price, either party may terminate this Agreement or parties may mutually
32  agree to amend the price.

33

34  D.  **EARNEST MONEY:**
35  1.  **SUBMISSION:** Buyer submits \$3,000 _____ U.S. Dollars as earnest money which shall be
36  applied to the purchase price at closing. **If not submitted with Purchase Agreement, Earnest money shall be**
37  **delivered to Escrow Agent within** 2 business ____ ☐hours ☑days **after acceptance of offer to purchase.**
38  Unless indicated otherwise in this Agreement, the listing broker shall act as Escrow Agent and shall, after acceptance
39  of the Agreement and **within two (2) banking days of receipt of the earnest money,** deposit the earnest money
40  into its escrow account and hold it until time of closing the transaction or termination of this Agreement. Earnest money
41  shall be returned promptly to Buyer in the event this offer is not accepted. If Buyer fails for any reason to timely submit
42  Earnest Money in the contracted amount, Seller may terminate this Agreement upon notice to Buyer prior to Escrow
43  Agent's receipt of the Earnest Money.
44  2.  **DISBURSEMENT:** Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the Broker,
45  then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If no
46  provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by certified
47  mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2. If neither Buyer nor Seller enters
48  into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may
49  release the Earnest Money to the party identified in the certified letter. If the Escrow Agent is the Broker, Broker
50  shall be absolved from any responsibility to make payment to Seller or Buyer unless the parties enter into a Mutual
51  Release or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2 (release of earnest money).
52  Buyer and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good
53  faith disbursement of Earnest Money in accordance with this Agreement and licensing regulations

dotloop signature verification:  dtlp.us/1nPw-9ucv-xpJS

54  **3.** **LEGAL REMEDIES/DEFAULT:** If this offer is accepted and Buyer fails or refuses to close the transaction,
55  without legal cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller
56  retains all rights to seek other legal and equitable remedies, which may include specific performance and additional
57  monetary damages. All parties have the legal duty to use good faith and due diligence in completing the terms and
58  conditions of this Agreement. A material failure to perform any obligation under this Agreement is a default which
59  may subject the defaulting party to liability for damages and/or other legal remedies, which, as stated above, may
60  include specific performance and monetary damages in addition to loss of Earnest Money.

61  E.  **METHOD OF PAYMENT:** (Check appropriate paragraph number)
62      1. ☐ **CASH:** The entire purchase price shall be paid in cash, U.S. Dollars, and no financing is required. **Buyer**
63         **to provide proof of funds submitted** ☐**with offer** ☐**within** _____ **days of acceptance.**
64         **Buyer** ☐ **will** ☐ **will not have an appraisal.**
65      2. ☐ **NEW MORTGAGE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a
66
67         ☒ **Conventional** ☐ **Insured Conventional** ☐ **FHA** ☐ **VA** ☐ **Other:** _____ first
68         mortgage loan for 80_____ % of purchase price, payable in not less than 30_____ years, with an
69         original rate of interest not to exceed best available____ % per annum and not to exceed best avail__ points. Buyer
70         shall pay all costs of obtaining financing, except _____
71         _____ .
72         Any inspections and charges which are required to be made and charged to Buyer or Seller by the lender,
73         FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or
74         regulations and shall supersede any provisions of this Agreement.
75
76      3. ☐ **ASSUMPTION:** ( Attach Financing Addendum)
77      4. ☐ **CONDITIONAL SALES CONTRACT: (Attach Financing Addendum)**
78      5. ☐ **OTHER METHOD OF PAYMENT: (Attach Financing Addendum)**
79
80  F.  **TIME FOR OBTAINING FINANCING:**
81      1. **APPLICATION:** Within 5_____ days after the acceptance of this Agreement, Buyer agrees to make written
82         application for any financing necessary, to complete this transaction or for approval to assume the unpaid balance
83         of the existing mortgage and to make a diligent effort to meet the lender's requirements and to obtain financing in
84         cooperation with the Broker and Seller. **Buyer directs lender to order appraisal immediately.**
85      2. **APPROVAL:** No more than 30_____ days after acceptance of this Agreement shall be allowed for obtaining loan
86         approval or mortgage assumption approval. If an approval is not obtained within the time specified above, this
87         Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing.
88
89  G.  **CLOSING:**
90      1. **DATE:** The closing of the sale (the "Closing Date") shall be on or before 12/21/2020_____, or
91         within 2_____ days after clear to close with lender_____, whichever is later or this Agreement
92         shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest
93         date above must be by mutual written agreement of the parties.
94      2. **FEE:** The settlement or closing fee incurred in conducting the settlement charged by the closing agent or company
95         shall be paid by ☐ Buyer (included in allowance, if provided) ☐ Seller ☒ **Shared equally.**
96      3. **CONTINGENCY:** This Agreement:
97         ☒ **is not contingent** upon the closing of another transaction;
98         ☐ **is contingent** upon the closing of the pending transaction on Buyer's property located at _____
99         _____ scheduled to close by _____ .
100        ☐ **is contingent upon the acceptance of a Purchase Agreement on Buyer's property:**
101          ☐ **Addendum to Purchase Agreement First Right Contingency. See attached Addendum.**
102          ☐ **Addendum to Purchase Agreement Limited Purchase Contingency Right. See attached Addendum.**
103     4. **GOOD FUNDS:** Notwithstanding terms to the contrary, the Parties agree that as a condition to Closing, all funds
104        delivered to the closing agent's escrow account be in such form that the closing agent shall be able to disburse in
105        compliance with I.C. 27-07-3.7 et. seq. Therefore, all funds from a single source of $10,000, U.S. Dollars, or more shall
106        be wired unconditionally to the closing agent's escrow account and all funds under $10,000, U.S. Dollars, from a single
107        source shall be good funds as defined by statute. Buyer is advised that the cost incurred to wire funds on behalf of
108        the buyer to the closing agent's escrow account for the closing of this transaction shall become an expense to the buyer
109        and the actual cost incurred shall appear on the closing statement.
110     5. **WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide**
111        **nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM**
112        **BROKER OR TITLE COMPANY, do not respond until you verify the authenticity by direct communication with**
113        **Broker or Title Company. Do not rely on telephone numbers provided in the electronic communication. Such**
114        **requests may be part of a scheme to steal funds or use your identity.**

dotloop signature verification: dtlp.us/YbFF-Kevr-cI2djb

115 H.  **POSSESSION:**
116     1.  The possession of the Property shall be delivered to Buyer ☑ at closing ☐ within _____ days beginning
117         the day after closing by _____ ☐ AM ☐ PM ☐ noon or ☐ on or before _____ if closed.
118         For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing $ 100 _____ U.S.
119         Dollars per day. If Seller does not deliver possession by the date and time required in the first sentence of this
120         paragraph, Seller shall pay Buyer $ 200 _____ U.S. Dollars per day as **liquidated damages** until possession
121         is delivered to Buyer; and Buyer shall have all other legal and equitable remedies available against the Seller.
122     2.  **MAINTENANCE OF PROPERTY:** Seller shall maintain the Property in its present condition until its **possession** is
123         delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing
124         to determine whether Seller has complied with this paragraph. **Seller shall remove all debris and personal property**
125         **not included in the sale.**
126     3.  **CASUALTY LOSS:** Risk of loss by damage or destruction to the Property prior to the closing shall be
127         borne by Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to
128         closing, Buyer, at Buyer's option, may either **(a) terminate this Agreement with prompt return of earnest money**
129         **to buyer or (b) elect to close the transaction,** in which event Seller's right to all real property insurance proceeds
130         resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.
131     4.  **UTILITIES/MUNICIPAL SERVICES:** Seller shall pay for all municipal services and public utility charges through the
132         day of **possession.**
133
134 I.  **SURVEY:** Buyer shall receive a **(Check one)** ☐ **SURVEYOR LOCATION REPORT,** which is a survey where corner
135     markers are not set; ☐ **BOUNDARY SURVEY,** which is a survey where corner markers of the Property are set prior to
136     closing; ☑ **WAIVED,** no survey unless required by lender; at **(Check one)** ☐ **Buyer's expense (included in**
137     **allowance, if provided)** ☐ **Seller's expense** ☐ **Shared equally.** The survey shall (1) be received prior to closing and
138     certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all improvements and
139     easements. If Buyer waives the right to conduct a survey, the Seller, the Listing and Selling Brokers, and all licensees
140     associated with Brokers are released from any and all liability relating to any issues that could have been discovered by
141     a survey. This release shall survive the closing.
142
143 J.  **FLOOD AREA:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's
144     expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums
145     or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents
146     regarding the need for flood insurance and possible premium increases. Buyer ☑ **may** ☐ **may not** terminate this
147     Agreement if the Property requires flood insurance.
148
149 K.  **BUILDING USE LIMITATIONS:** Buyer ☑ **may** ☐ **may not** terminate this Agreement if the Property is subject to building
150     or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property. Buyer
151     shall have _____ after acceptance of this Agreement to satisfy this contingency.
152
153 L.  **HOMEOWNER'S INSURANCE:** Completion of this transaction shall be contingent upon the Buyer's ability to
154     obtain a favorable written commitment for homeowner's insurance within _____ days after acceptance of this
155     Agreement. Buyer should consult with one or more insurance agents regarding optional, or additional, coverage.
156
157 M.  **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE:** Buyer and Seller acknowledge that Listing Broker,
158     Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or
159     experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological
160     contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants
161     at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory
162     problems, particularly in persons with immune system problems, young children and/or the elderly.
163
164     Buyer is STRONGLY ADVISED to obtain inspections (see below) to fully determine the condition of the Property and its
165     environmental status. The ONLY way to determine if Environmental Contaminants are present at the Property at
166     harmful levels is through inspections.
167
168     **Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental**
169     **Contaminants and release and hold harmless all Brokers, their companies and licensees from any and all**
170     **liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result,**
171     **repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This**
172     **release shall survive the closing.**
173
174 N.  **INSPECTIONS: (Check one)**
175
176     **Buyer has been made aware that independent inspections disclosing the condition of the property may be**
177     **conducted and has been afforded the opportunity to require such inspections as a condition of this Agreement.**

dotloop signature verification: dtlp.us/rbF4-Xl2W-cY78,0

178    **1.** ☐   BUYER <u>WAIVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS
179      **Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own**
180      **examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with**
181      **Brokers from any and all liability relating to any defect or deficiency affecting the Property, which**
182      **release shall survive the closing. Required FHA/VA or lender inspections are not included in this**
183      **waiver.**
184

185    **2.** ☑   BUYER <u>RESERVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)
186      Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA, or
187      Buyer's lender(s). All inspections shall be:
188        a.   At Buyer's expense (unless agreed otherwise by the parties or required by lender);
189        b.   Conducted by licensed, independent inspectors or qualified independent contractors selected by
190          Buyer within the following time periods.
191    Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's inspections. Seller must make **all**
192    **areas of the Property** available and accessible for Buyer's inspection.
193

194    **3.** ☐   PROPERTY IS SOLD "AS IS". See Attached Addendum.
195

196 **INSPECTION/RESPONSE PERIOD:**
197    **A.**   **INITIAL INSPECTION PERIOD:** Buyer shall order all independent inspections after acceptance of the Purchase
198      Agreement. Buyer shall have 15        days beginning the day following the date of acceptance of the Purchase
199      Agreement to respond to the inspection report(s) in writing to Seller (see "Buyer's Inspection Response").
200    **B.**   **SCOPE OF INSPECTION:** Inspections may include but are not limited to the condition of the following systems and
201      components: heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation, basement, crawl space,
202      well/septic, water, wood destroying insects and organisms, lead-based paint (note: intact lead-based paint that is in
203      good condition is not necessarily a hazard), radon, mold and other biological contaminants and/or the following:
204      _____ .
205    **C.**   **ADDITIONAL INSPECTION:** If the INITIAL inspection report reveals the presence of lead-based paint, radon, mold
206      and other biological contaminants, or any other condition that requires further examination or testing, then Buyer
207      shall notify Seller in writing and have 10      **additional days from the deadline listed above to order,**
208      **receive and respond in writing to all inspection reports.**
209    **D.**   **INSPECTION RESPONSE(S) REQUIRED:** If the Buyer does not comply with any Inspection/Response Period or make
210      a written objection to any problem revealed in a report within the applicable Inspection/Response Period, the Property
211      shall be deemed to be acceptable. If one party fails to respond or request in writing an extension of time to respond to the
212      other party's Independent Inspection Response, then that inspection response is accepted. A timely request for
213      extension is not an acceptance of the inspection response, whether or not granted. A reasonable time period to respond
214      is required to prevent misuse of this acceptance provision. Factors considered in determining reasonable time periods
215      include, but are not limited to, availability of responding party to respond, type and expense of repairs requested and
216      need of responding party to obtain additional opinions to formulate a response.
217    **E.**   **IF DEFECT IS IDENTIFIED:** If an Inspection Report reveals a DEFECT(S) with the Property, the Buyer must:
218        1.   Provide the inspection report, or relevant parts thereof, to the Seller; and
219        2.   Give the Seller the opportunity to remedy the defect(s).
220    **F.**   **SELLER RESPONSE TO INSPECTION DEFECT:** If Seller is unable or unwilling to remedy the defect(s) to Buyer's
221      reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then Buyer may terminate this
222      Agreement or waive such defect(s) and the transaction shall proceed toward closing.
223    **G.**   **DEFECT DEFINED:** Under Indiana law, "Defect" means a condition that would have a significant adverse effect on
224      the value of the Property, that would significantly impair the health or safety of future occupants of the property, or
225      that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of
226      the premises.
227    **H.**   **PREVIOUSLY DISCLOSED DEFECT:** Buyer agrees that any property defect(s) previously disclosed by Seller, or routine
228      maintenance and minor repair items mentioned in a report, shall not be a basis for termination of this agreement.
229    **I.**   **INSPECTION RELEASE:** Buyer releases and holds harmless all Brokers and their companies from any and all
230      liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair,
231      disclosed defect or deficiency affecting the Property, including but not limited to lead-based paint, radon, mold and
232      other biological contaminants. This release shall survive the closing.
233

234 **O.**   **LIMITED HOME WARRANTY PROGRAM:**
235    Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer
236    which ☑ **will** ☐ **will** not be provided at a cost not to exceed $ 800      U.S. Dollars charged to ☐ **Buyer**
237    ☑ **Seller and ordered by** ☑ **Buyer** ☐ **Seller.** Buyer and Seller acknowledge this LIMITED HOME WARRANTY
238    PROGRAM may not cover any pre-existing defects in the Property nor replace the need for an independent home
239    inspection. Broker may receive a fee from the home warranty provider and/or a member benefit. The Limited Home
240    Warranty Program is a contract between Buyer/Seller and the Home Warranty Provider. The Parties agree that Brokers
241    and their companies shall be released and held harmless in the event of claims disputes with the Home Warranty
242    Provider.

243 P.  **DISCLOSURES: (Check one)**
244     1.  Buyer ☑ **has** ☐ **has not** ☐ **not applicable** received and executed SELLER'S RESIDENTIAL REAL ESTATE
245         SALES DISCLOSURE.
246     2.  Buyer ☐ **has** ☐ **has not** ☑ **not applicable** received and executed a LEAD-BASED PAINT CERTIFICATION
247         AND ACKNOWLEDGEMENT.
248

249 Q.  **TITLE APPROVAL:** Prior to closing, Buyer shall be furnished with    ☑ **a title insurance commitment for the**
250     **most current and comprehensive ALTA Owner's Title Insurance Policy available** in the amount of the purchase price or
251     ☐ **an abstract of title continued to date,** showing marketable title to Property in Seller's name. Seller must convey title free
252     and clear of any encumbrances and title defects, with the exception of any mortgage assumed by Buyer and any restrictions
253     or easements of record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's
254     request, can provide information about availability of various additional title insurance coverages and endorsements and the associated
255     costs.
256

257     **OWNER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Owner's Policy
258     (including title search and examination and commitment preparation), to be paid by ☐ **Buyer (included in allowance,**
259     **if provided)** ☑ **Seller** ☐ **Shared equally.**
260

261     **LENDER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Lender's Policy
262     (including title search and examination and commitment preparation), if applicable, to be paid by ☑ **Buyer (included in**
263     **allowance, if provided)** ☐ **Seller** ☐ **Shared equally** ☐ **Other** _____
264     _____
265

266     The parties agree that ☑ **Seller** ☐ **Buyer** will select a title insurance company to issue a title insurance policy and will
267     order the commitment ☑ **immediately** or ☐ **other:** Meridian Title
268     _____
269

270     Pursuant to Federal and State Law, Seller cannot make Seller's selection of a title insurance provider a condition of this
271     Agreement.
272

273     Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the deed
274     and vendor's affidavit), so that marketable title can be conveyed.
275

276 R.  **TAXES: (Check appropriate paragraph number)**
277     1. ☐  Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable on
278         _____, and all taxes due thereafter. At or before closing, Seller shall pay all taxes for
279         the Property payable before that date.
280     2. ☑  All taxes that have accrued for any **prior calendar year** that remain unpaid shall be paid by Seller either to the
281         County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued for the **current**
282         **calendar year** shall be prorated on a calendar-year basis as of the day immediately prior to the Closing Date.
283     3. ☐  For recent construction or other tax situations. Seller will give a tax credit of
284         $_____ U.S. Dollars to Buyer at closing. This shall be a final settlement.
285

286     **For purposes of paragraph 1 and 2:** For the purpose of determining the credit amount for accrued but unpaid taxes,
287     taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified* tax rates.
288     This shall be a final settlement.
289

290 **WARNING:**
291 **\*The succeeding year tax bill for recently constructed homes or following reassessment periods may greatly exceed**
292 **the last tax bill available to the closing agent.**
293

294 **\*Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.**
295

296 **\*Buyer may apply for current-year exemptions/credits at or after closing.**
297

298 S.  **PRORATIONS AND SPECIAL ASSESSMENTS:** Insurance, if assigned to Buyer, interest on any debt assumed or
299     taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited
300     to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall pay any
301     special assessments applicable to the Property for municipal improvements previously made to benefit the Property.
302     Seller warrants that Seller has no knowledge of any planned improvements which may result in assessments and that
303     no governmental or private agency has served notice requiring repairs, alterations or corrections of any existing
304     conditions. Public or municipal improvements which are not completed as of the date above but which will result in a

dotloop signature verification: dtlp.us/YUFk-Ki5M-cYZ6JU

305    lien or charge shall be paid by Buyer. Buyer will assume and pay all special assessments for municipal improvements
306    completed after the date of this Agreement.
307
308  T.   **TIME:** Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the
309    Purchase Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in
310    writing to a different date and/or time.
311
312    **Note: Seller and Buyer have the right to withdraw any offer/Counter Offer prior to written acceptance and**
313    **delivery of such offer/Counter Offer.**
314
315  U.   **HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"):** Documents for a **mandatory**
316    membership association shall be delivered by the Seller to Buyer within 15____days after acceptance of this
317    Agreement, but not later than 10 days prior to closing pursuant to I.C. 32-21-5-8.5. Brokers are not responsible for
318    obtaining, verifying or interpreting this information. The parties agree that Brokers and their companies shall be
319    released and held harmless from any and all liability arising out of or related to these documents.
320
321    If the Buyer does not make a written response to the documents within 5____days after receipt, the documents
322    shall be deemed acceptable. In the event the Buyer does not accept the provisions in the documents and such
323    provisions cannot be waived, this Agreement may be terminated by the Buyer and the earnest money deposit shall be
324    refunded to Buyer promptly. Any approval of sale required by the Association shall be obtained by the Seller, in writing,
325    within 5____days after Buyer's approval of the documents. Fees charged by the "Association", or its management
326    company, for purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer
327    and Seller. Start-up or one time reserve fees, if any, shall be paid by Buyer.
328
329    **Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable. Buyer shall**
330    **therefore be responsible to become fully acquainted with neighborhood and other off-site conditions that could affect the**
331    **Property.**
332
333  V.   **ATTORNEY'S FEES:** Any party to this Agreement who is the prevailing party in any legal or equitable
334    proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally
335    entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.
336
337  W.   **ADDITIONAL PROVISIONS:**
338
339    1.  Unless otherwise provided, any proration's for rent, taxes, insurance, damage deposits, association
340       dues/assessments, or any other items shall be computed as of the day immediately prior to the Closing Date.
341
342    2.  Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence
343       insurance. Broker is not responsible for providing or verifying this information.
344
345    3.  The Indiana State Police has created a registry of known meth contaminated properties which can be found at
346       www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this information.
347
348    4.  The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the
349       identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or
350       verifying this information.
351
352    5.  Conveyance of this Property shall be by general Warranty Deed, or by _____
353       subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.
354
355    6.  If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act,
356       Seller will pay applicable tax obligation.
357
358    7.  Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted
359       electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return
360       receipt requested, addressed to Seller or Buyer or the designated agent of either party.
361
362    8.  This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is
363       binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns.

dotloop signature verification: dtlp.us/A9NX-BXXo-YYyD

9.  In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10.  This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11.  All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12.  Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13.  By signing below, the parties to this transaction acknowledge: 1) receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a listing service, Internet or other advertising media.

14.  Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15.  Buyer and seller consent to receive communications from Broker(s) via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16.  Buyer discloses to Seller that Buyer holds Indiana Real Estate License # _____.

17.  Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

X.  **FURTHER CONDITIONS (List and attach any addenda):** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Y.  **CONSULT YOUR ADVISORS:** Buyer and Seller acknowledge they have been advised that. prior to signing this document, they may seek the advice of an attorney for the legal or tax consequences of this document and the transaction to which it relates. In any real estate transaction, it is recommended that you consult with a professional, such as a civil engineer, environmental engineer, or other person, with experience in evaluating the condition of the Property.

Z.  **ACKNOWLEDGEMENTS: This** ☐ **is** ☑ **is not** a limited agency transaction. Buyer and Seller acknowledge that each has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer and Seller further acknowledge that they understand and accept agency relationships involved in this transaction.

**EXPIRATION OF OFFER:** Unless accepted in writing by Seller and delivered to Buyer by 6:00
☐ AM ☑ PM ☐ Noon, on 11/22/2020 _____, this Purchase Agreement shall be null and void and all parties shall be relieved of any and all liability or obligations.

This Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The parties agree that this Agreement, together with any and all subsequent forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original documents shall be promptly delivered, if requested.

426 By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge
427 receipt of a signed copy.

428
429 *Jack Jackson*                    dotloop verified
                                      11/21/20 8:34 PM EST
                                      SLGH-FSUW-LCGF-HJVU
430 BUYERS SIGNATURE                    DATE

*Juliet Jackson*                 dotloop verified
                                 11/21/20 8:42 PM
                                 EST
                                 EYVE-DYA8-JIZD-93I1
BUYER'S SIGNATURE                    DATE

431
432 Jack Jackson
433 PRINTED

Juliet Jackson
PRINTED

434
435 AA. SELLER'S RESPONSE: (Check appropriate paragraph number):
436
437 On _____11/22/2020_____ at _____ ☐ AM ☐ PM ☐ Noon
438
439 1. ☐ The above offer is Accepted.
440
441 2. ☐ The above offer is Rejected.
442
443 3. ☑ The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and the Counter
444    Offer.
445
446
447 By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge
448 receipt of a signed copy.
449
450 *Johnny Lorick*              dotloop verified
                                 11/22/20 11:17 AM EST
                                 D4TQ-L1TV-SVNX-NGH8
451 SELLER'S SIGNATURE                    DATE

SELLER'S SIGNATURE                    DATE

452
453
454 PRINTED

PRINTED



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR) This form is
restricted to use by members of IAR.  This is a legally binding contract, if not understood seek legal advice.
**Form #02. Copyright IAR 2020**



## COUNTER OFFER # 1 _____

**For use only by members of the Indiana Association of REALTORS®**

1.  11 _____ ☑ AM ☐ PM 11/22/2020 _____
2.
3.  The undersigned makes the following Counter Offer to the Purchase Agreement dated 11/21/2020
4.  concerning property commonly known as 6445 Harrison Ridge Boulevard ,
5.  in Lawrence _____ Township, Marion County _____ County, Indianapolis _____
6.  Indiana between: Johnny Lorick _____ Seller(s)
7.  and Jack Jackson and Juliet Jackson _____ Buyer(s).
8.  1. Purchase price to be $445,000
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.  **All other terms and conditions of the Purchase Agreement and all previous Counter Offers shall remain in**
26.  **effect except as modified by this Counter Offer.**
27.
28.  **Note: Seller and Buyer have the right to withdraw any offer/Counter Offer prior to written acceptance and**
29.  **delivery of such offer/Counter Offer.**
30.
31.  **This Counter Offer #1** _____ **is void if not accepted in writing on or before** 6 _____ ☐ AM ☑ PM ☐ Noon
32.  on 11/22/2020 _____ .
33.
34.  This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an
35.  original, but all of which together shall constitute one and the same instrument. The parties agree that this Agreement
36.  may be transmitted between them by facsimile machine. The parties intend that faxed signatures constitute original
37.  signatures and are binding on the parties. The original document shall be promptly delivered, if requested.

38.
39.  *Johnny Lorick* | dotloop verified 11/22/20 11:17 AM EST YBSJ-UFNI-BUJJ-KDWB
40.  ☐ SELLER ☐ BUYER SIGNATURE        DATE         ☐ SELLER ☐ BUYER SIGNATURE        DATE
41.
42.
43.  PRINTED                                          PRINTED
44.
45.  ### RESPONSE TO COUNTER OFFER # 1 _____
46.  The above Counter Offer # 1 _____ is ☑ Accepted ☐ Countered ☐ Rejected at 2:00 _____ ☐ AM ☑ PM ☐ Noon
47.  on     11/22/2020 _____ . Receipt of a signed copy of this Counter Offer is acknowledged.
48.
49.  *Jack Jackson* | dotloop verified 11/22/20 2:06 PM EST 2PLO-LJIY-F4QO-5UU1    *Juliet Jackson* | dotloop verified 11/22/20 2:08 PM EST UFLN-GERP-AKIA-4JFA
50.  ☐ SELLER ☑ BUYER SIGNATURE        DATE         ☐ SELLER ☑ BUYER SIGNATURE        DATE
51.
52.       Jack Jackson                                   Juliet Jackson
53.  PRINTED                                          PRINTED



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
**Form #16A.** Copyright IAR 2020





*Provided as a member service by the*
**INDIANA ASSOCIATION OF REALTORS®, INC.**

# AMENDMENT # 1_____ TO PURCHASE AGREEMENT
### For use only by members of the Indiana Association of REALTORS®

1   Date: 12/02/2020

2   This Amendment is attached to and made a part of Purchase Agreement dated 11/21/2020 ,

3   on property known as 6445 Harrison Ridge Blvd

4   Indianapolis , Indiana,

5   Zip 46236 (the "Property").

6   It is mutually agreed to amend Purchase Agreement as follows: **(check appropriate paragraph letter)**

7   ☐ **A.**   The time for making application(s) for financing necessary to complete the transaction, or approval of

8   mortgage assumption, is extended to .

9   ☐ **B.**   The time for obtaining favorable commitment(s) for financing necessary to complete the transaction, or

10   approval of mortgage assumption, is extended to .

11   ☐ **C.**   The time for closing the transaction is extended to .

12   ☐ **D.**   The time that Seller may retain possession of the Property is changed to

13

14   ☐ **E.**   The time for making any responses to inspections is extended to .

15   ☐ **F.**   The time for delivering homeowner association/condominium documents is extended to

16

17   ☑ **G.**   Other changes in the Purchase Agreement: Remove Jack from the purchase agreement and Juliet will be the only

18   buyer listed on the agreement.

19

20

21

22

23

24

25

26

27

28

29   **All other terms and conditions of the Purchase Agreement remain unchanged.**

30   By signature below, the parties acknowledge receipt of a signed copy of this Amendment.

31   *Jack Jackson*    dotloop verified 12/02/20 1:30 PM EST VE2H-0FR7-1VEQ-L7HN

32   **BUYER'S SIGNATURE**     **DATE**

*Juliet Jackson*    dotloop verified 12/02/20 1:32 PM EST CGWR-XJGB-NS2X-XAWT

**BUYER'S SIGNATURE**     **DATE**

33   Jack Jackson

34   **PRINTED**

Juliet Jackson

**PRINTED**

35   *Johnny Lorick*    dotloop verified 12/02/20 4:17 PM EST XTLC-1HI8-TULG-IC85

36   **SELLER'S SIGNATURE**     **DATE**

**SELLER'S SIGNATURE**     **DATE**

37   Johnny Lorick

38   **PRINTED**

**PRINTED**

 Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice. **Form #20B.** Copyright IAR 2020 



*Provided as a member service by the*
**INDIANA ASSOCIATION OF REALTORS®, INC.**

# REQUEST FOR EXTENSION OF TIME FOR INSPECTION RESPONSE/REPLY

### For use only by members of the Indiana Association of REALTORS®

1 Date: 12/03/2020

3 Property Address: 6445 Harrison Ridge Boulevard, Indianapolis, IN 46236

7 This Request for Extension of Time submitted by ☐ Buyer ☑ Seller is in response/reply to ☑ Buyer's ☐ Seller's Inspection
8 Response/Reply # ONE

10 The parties agree that the time for making any response/reply to inspection response/reply is extended to
11 12/11/2020.

19 A timely request for extension is not an acceptance of the inspection response, whether or not granted. A REASONABLE TIME
20 PERIOD TO RESPOND IS REQUIRED TO PREVENT MISUSE OF THIS ACCEPTANCE PROVISION. Factors considered in
21 determining reasonable time periods include, but are not limited to, availability of responding party to respond, type and expense of
22 repairs requested and need of responding party to obtain additional opinions to formulate a response.

25
26                                                                 *Johnny Lorick*                  dotloop verified
27 BUYER'S SIGNATURE                         DATE    SELLER'S SIGNATURE                        12/03/20 8:11 PM EST
                                                                                                W9MT-9Q7J-TS3O-R0NY
                                                                                                              DATE
29 Juliet Jackson                                   Johnny Lorick
30 PRINTED                                          PRINTED

33 BUYER'S SIGNATURE                         DATE    SELLER'S SIGNATURE                              DATE

36 PRINTED                                          PRINTED

 Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice. Form #57A. Copyright IAR 2020.